### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMY PHILLIPS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA,<br><br>　　　　Defendant. | Civil Action No. 22-277 (JEB) |

### DEFENDANT'S REPLY IN SUPPORT OF
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### INTRODUCTION

Plaintiff Amy Phillips alleges that former Chief of Police for the Metropolitan Police Department (MPD) Peter Newsham implemented a so-called "watchlist" policy that treated Freedom of Information Act (FOIA) requests differently depending on the identity of the requestor and whether the requestor was seeking information that might lead to criticism of MPD. Even though Chief Newsham retired in early 2021, plaintiff alleges that Chief Robert Contee III has maintained the policy. Plaintiff further alleges that the watchlist policy was applied to her FOIA request in violation of her rights under the First Amendment. Plaintiff is wrong and her claim should be dismissed.

First, plaintiff's allegations are not properly brought under a First Amendment framework and, regardless, she has failed to allege a violation of her First Amendment rights. Plaintiff's allegation that the District follows FOIA requirements for some requests while failing to adhere to the FOIA requirements for others is one of selective enforcement, which should be brought under the Equal Protection Clause. Even if plaintiff's claim was properly brought under the First

Amendment, plaintiff would still fail to state a claim because she has not alleged the requisite pattern of intentional discrimination to establish content or viewpoint discrimination.

Second, even assuming plaintiff has alleged a violation of her constitutional rights, she has failed to allege that the violation was caused by a policy of the District. Plaintiff has not adequately alleged that the watchlist policy was implemented by a "final policymaker," nor has she alleged that the purported application of the watchlist policy qualifies a custom or practice.

For those reasons, the Complaint should be dismissed with prejudice.

## ARGUMENT

I.   **Plaintiff Fails To State a Claim Under the Free Speech Clause.**

   A.   **Plaintiff's Challenge to the District's Handling of Certain FOIA Requests Is Not Properly Raised as a First Amendment Claim.**

Plaintiff maintains that she has properly brought her viewpoint discrimination claim under the First Amendment. Pl.'s Mem. of Points and Authorities in Opp'n to Def.'s Mot. to Dismiss at 15–17 (Opp'n) [10]. But plaintiff's allegation that the District follows FOIA requirements for some requests while failing to adhere to the FOIA requirements for others is "in essence, one of selective enforcement." *Frederick Douglass Found., Inc. v. District of Columbia*, Civil Action No. 20-3346, 2021 WL 1166841, at *16 (D.D.C. Mar. 26, 2021) (quoting *Henderson v. Kennedy*, 253 F.3d 12, 17-18 (D.C. Cir. 2001)); *see* Def.'s Mem. in Supp. of Mot. to Dismiss Pl.'s Compl. (Def.'s Mem.) at 7–9 [9-1]. As this Court noted, "[t]he D.C. Circuit has explained that selective-enforcement claims are properly analyzed under the Equal Protection Clause, not the First Amendment, even if a plaintiff alleges that the selective enforcement occurred because the government sought to prevent the exercise of her free-speech rights." *Frederick Douglass Found.*, 2021 WL 1166841, at *5 (citing *Sanjour v. EPA*, 56 F.3d 85, 92 n.9 (D.C. Cir. 1995)).

2

Plaintiff attempts to shoehorn her claim into a First Amendment framework in two ways. First, she likens this case to one involving a "metaphysical public forum" but fails to provide any explanation for the comparison. Opp'n at 21. And, indeed, its application here is elusive. In support, plaintiff merely cites to two unanalogous cases that illustrate why the metaphysical forum analysis—or any forum analysis—is misplaced. *See id.* (citing *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830 (1995); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)). "[A]s an initial matter[,] a speaker must seek access to public property or to private property dedicated to public use to evoke First Amendment concerns." *Cornelius*, 473 U.S. at 801; *see id.* at 799–800 ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities"). In *Rosenberger*, the Supreme Court found that a "forum more in a metaphysical than in a spatial or geographic sense" was created by a university funding and printing a student newspaper. 515 U.S. at 830. Similarly, in *Cornelius*, the Supreme Court found that the government's scheme for permitting charitable solicitations in the federal workplace was a "nonpublic forum." 473 U.S. at 805.[1] In other words, both cases involve government restrictions on "instrumentalit[ies] used for communication" (*e.g.*, printing newspapers and soliciting donations). *See id.* at 803. In contrast, here, plaintiff does not even argue that the alleged watchlist policy restricts speech in any forum used for communications; instead,

---

[1]    Notably, even if this case involves a nonpublic forum, as plaintiff suggests, *see* Opp'n at 21, the District's actions would not be analyzed under heightened scrutiny under the First Amendment, as plaintiff argues, *see id.* at 20–22. Indeed, "[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806.

plaintiff alleges that the watchlist policy affects access to government-controlled information that she may *later* use to communicate information in a public forum. *See* Compl. ¶ 95 [1]. A government agency's internal procedures for processing FOIA requests is plainly not a forum for requestors to communicate their views to others, and thus, plaintiff's metaphysical forum theory fails to get off the ground.

Second, plaintiff alternatively argues that access to government documents under FOIA is akin to a public benefit to which plaintiff is entitled. *See* Opp'n at 21–22 (citing *Speiser v. Randall*, 357 U.S. 513, 518 (1958)). But, even if that were true, no public benefit is at issue here. The policy underlying plaintiff's Complaint concerns the internal process through which FOIA requests are processed. *See* Compl. ¶¶ 38–52. And, under the District's FOIA statute, no such procedural minutia is mandated; the statute does not create an entitlement to particular procedures for internal processing of FOIA requests. *See* Def.'s Mem. at 2–3 (describing procedures required under FOIA); Section II.A. below. There is simply no public benefit threatened by the FOIA policy plaintiff alleges.

Plaintiff also argues that, even if the equal protection framework were more appropriate for her claim, the distinction would not affect the outcome here. Opp'n at 17–19. While the District agrees the equal protection and free speech standards are similar and the outcome would be the same, the Parties differ on what that outcome would be. A plaintiff can only succeed on a selective enforcement claim by showing that she was (1) "singled out for prosecution from among others similarly situated" and (2) the prosecution was "improperly motivated" based on an arbitrary classification. *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)). The burden to establish a selective enforcement claim "is a demanding one because 'in the absence of clear evidence to the contrary,

courts presume that [government prosecutors] have properly discharged their official duties.'" *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (alterations in original)). Plaintiff cannot meet that burden here to show that the District selectively failed to apply FOIA's requirements to certain requests. Even if she had pled an equal protection claim—which she has not and cannot do so through briefing, *see* Fed. R. Civ. P. 8(a)—plaintiff's claim would still fail for the reasons discussed in the District's memorandum. *See* Def.'s Mem. at 12–16.

**B.     Even if Plaintiff's First Amendment Claim Were Properly Brought, Plaintiff Must Show a Pattern of Intentional Discrimination to Establish Content or Viewpoint Discrimination, and She Fails To Do So Here.**

Plaintiff claims that she need not show a "pattern" of intentional discriminatory government actions because her claims are not based "*solely* on observed instances of content-discriminatory action." Opp'n at 23 (emphasis in original). But they are. The policy that she alleges was created by former Chief Newsham—which mirrors the policy described by plaintiff's declarant, former Inspector Vendette Parker—does not discriminate based on content and viewpoint. *See* Compl. ¶¶ 38–52; Decl. of Vendette Parker (Parker Decl.) [1-1]. According to plaintiff's allegations, the alleged policy does not burden her access to government documents or her speech prior to or after receiving them; it merely dictates certain internal communications among MPD employees. *See id.* Plaintiff's sole allegations of potentially adverse treatment appear in the alleged instances of a single MPD employee's *misapplication* of either the alleged policy implemented under Chief Newsham or the requirements of FOIA. Thus, plaintiff fails to state a First Amendment claim.

In her opposition, plaintiff attempts to recast her allegations as involving a facial challenge to the District's policy of handling certain FOIA requests. Opp'n 23–26. But plaintiff has failed to allege any policy that is discriminatory on its face. The actual procedure plaintiff decries as content

and viewpoint discrimination involves nothing of the sort. By plaintiff's own account, the alleged

nefarious policy implemented by former Chief Newsham governs MPD's internal procedures for

processing FOIA requests; it merely involves extra notifications to leadership and leadership's

involvement in the responses for certain requests. Compl. ¶¶ 38–52. It does *not* mandate that

certain requests (based on viewpoint of the speaker or content of the request) be delayed or denied

or otherwise run afoul of FOIA's requirements. *See id.*

Importantly, this benign description of the policy as one governing internal procedures that

do not affect access to records under FOIA is supported by plaintiff's declarant. Inspector Parker's

own declaration includes *no mention* of a discriminatory motive behind the policy or an allegation

that the policy involves denying or delaying unsavory FOIA requests. *See generally* Parker Decl.

In fact, she does not allege any misapplication of FOIA requirements at all.

Plaintiff specifically argues that her allegation that the policy required Inspector Parker to

"flag requests 'that may lead to *criticism* of the department'" is evidence of a facial viewpoint

discrimination. Opp'n at 24 (quoting Compl. ¶ 42). But merely making one's superior aware of

certain requests—even based on the identity of the requestor or the content of the request—is not

discrimination because it has nothing to do with a restriction on the requestor's speech.  In other

words, by pointing only to internal mechanisms for which employees are involved or made aware

of certain requests, plaintiff fails to allege that the policy *restricts plaintiff's expression* even if the

definition of expression includes—as plaintiff incorrectly suggests, *see* Def.'s Mem. at 9–12—

access to government documents she believes she is entitled to receive or how she uses that

information in future speech. *See Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015) ("Under the

[First Amendment], a government ... has no power to restrict expression because of its message,

its ideas, its subject matter, or its content." (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S.

92, 95 (1972))). Thus, plaintiff's allegations cannot be the basis for a free speech claim because the alleged watchlist policy does not implicate *any* speech, even by the terms of plaintiff's own argument.

Plaintiff also mistakenly relies on a handful of instances in which she alleges either a misapplication of former Chief Newsham's nondiscriminatory "policy" or FOIA requirements resulted in adverse handlings of several FOIA requests. Plaintiff concedes that her only allegations that actually speak to potential failures to enforce FOIA's requirements involve those incidents described as resulting from the "watchlist policy in action." Opp'n at 19 (citing Compl. ¶¶ 61–66, 73, 75, 80, 84, 86). But none of the potential FOIA violations described in those incidents involved the alleged "watchlist policy" plaintiff challenges nor do they even implicate any decisions made by former Chief Newsham, who plaintiff argues is the relevant policy maker, *see id*. at 29–32. Instead, plaintiff alleges, at most, that in a few of the instances described, an MPD employee— Chief Operating Officer Leeann Turner, who plaintiff does not allege has the authority to make relevant policy—attempted to frustrate, delay, or deny certain FOIA requests. *See* Compl. ¶¶ 68, 73, 76. But those alleged actions, even taken as true, are *not* part of the policy plaintiff alleges Chief Newsham implemented. *See id*. ¶¶ 38–52. They are outside the scope of that policy, and, for the reasons described below, *see* Section II, not attributable to the District. And, even if they were, so few instances of alleged misconduct cannot carry the weight of showing that the District has a policy of discriminating based on content or viewpoint. *See* Def.'s Mem. at 14–16. Those allegations are insufficient to state a First Amendment claim.

Plaintiff also gets no mileage out of her contention that MPD's policy for handling certain FOIA requests "is based on the content of the requestor's prior speech or anticipated speech" and that "allegation [must be accepted] as true here." Opp'n at 25. The District does not have to accept

as true the legal conclusion that MPD's FOIA processing policy discriminates based on content or viewpoint, and, indeed, the District does not. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" cannot survive a motion to dismiss (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Plaintiff's contention that the alleged "watchlist policy" is discriminatory on its face is not supported by her allegations, and her conclusory allegations cannot rescue her claim from its insufficiency.

Thus, without plausible facts of a policy of discriminatory treatment of FOIA claims, plaintiff's argument is premised here solely on her "observed instances of instances of content-discriminatory action." Opp'n at 23. And, for the reasons discussed in the District's motion to dismiss, *see* Def.'s Mem. at 12–16, plaintiff fails to meet her burden to show that there was a "pattern" of discriminatory enforcement and that this pattern was the product of "a governmental policy or custom of intentional discrimination on the basis of viewpoint or content.'" *Frederick Douglass Found.*, 2021 WL 1166841, at *9 (quoting *Brown v. City of Pittsburgh*, 586 F.3d 263, 294 (3d Cir. 2009)). Thus, plaintiff's First Amendment claim should be dismissed.

### C.   <u>Strict Scrutiny Does Not Apply, But, Even if it Did, the District Would Satisfy That Standard.</u>

As discussed in the District's memorandum, heightened scrutiny is not applicable where, as here, plaintiff's allegations show that to the extent MPD's procedures for handling FOIA requests implicates plaintiff's speech (which it does not), the impetus for the procedures is unrelated to the suppression of speech. *See* Compl. ¶ 41 (alleging that the purpose of implementing procedures regarding the notification and involvement of leadership for certain FOIA requests was "to prevent [Chief] Newsham from being so blindsided [by the media] in the future" when asked about FOIA responses); *Legi-Tech, Inc. v. Keiper*, 766 F.2d 728, 735 (2d Cir. 1985) ("When

government regulates speech in the name of an interest unrelated to the suppression of speech, the regulation will survive constitutional challenge "only if the governmental interest outweighs the burden and cannot be achieved by means that do not infringe First Amendment rights as significantly."); Def.'s Mem. at 16–18.

Plaintiff, however, argues that strict scrutiny should apply here because "'[a policy] that is content based on its face is subject to scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech.'" Opp'n at 25–26 (quoting *Reed*, 576 U.S. at 165). But *Reed* is not applicable here. In *Reed,* the Court's analysis was limited to *facial* challenges to laws that are explicitly content-based, explaining that "innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.* at 166; *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (explaining that "[w]hen enforcing [the prohibition of laws that abridge the freedom of speech], our precedents distinguish between content-based and content-neutral regulations"). Thus, *Reed* is inapplicable when, as here, plaintiff only brings a challenge to the District's application of FOIA's requirements under the policy former Chief Newsham allegedly implemented. 1 WL 1166841, at *9 (quoting *Brown*, 586 F.3d at 294). As noted above, *see* I.B, the policy plaintiff alleges is not facially discriminatory; plaintiff's allegations regarding the District mishandling certain FOIA requests involve an MPD employee failing to apply FOIA requirements for a handful of requests. There is no content-based facial challenge here; there is only an as-applied challenge. Thus, strict scrutiny is not implicated.

Even if strict scrutiny did apply, the District's challenged "policy" would pass constitutional muster. As the District discussed in its memorandum, Def.'s Mem. at 16–18, the District's has a compelling interest in maintaining "close working relationships" between MPD

leadership and FOIA staff for high profile requests. *Connick v. Myers*, 461 U.S. 138, 151–52 (1983). "[T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs." *Cornelius*, 473 U.S. at 805 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 168 (1974) (Powell, J., concurring in part)). And the alleged policy does not involve any noticeable burden on the requestor; it is narrowly tailored to affect only the internal communications between MPD employees and it is limited to requests that merit leadership involvement or notifications. Def.'s Mem. at 18.

Plaintiff's response to the District's argument is to simply—and willfully—misinterpret the District's stated interest. Plaintiff contends that the District argued that "it should be permitted to base its responses to public information requests on the requestors' viewpoint." Opp'n at 27. Not so. Similarly, the District did *not* argue that "it should be permitted to break its own laws requiring prompt disclosure of public information" based on the "requesters' viewpoints." *Id.* As noted above, plaintiff's contention that the "policy" is facially discriminatory based on content or viewpoint is a legal conclusion unsupported by plaintiff's own allegations. *See* Section I.B. Plaintiff's Complaint does not allege that Chief Newsham mandated any particular response to the requests that were allegedly flagged for his review, nor did Chief Newsham's "policy" require that MPD run afoul of FOIA for certain requests. Even if plaintiff's allegations are taken as true, the District maintains that it would have a strong interest in maintaining a "policy" governing who is notified and involved in producing responses to certain FOIA requests. *See* Compl. ¶¶ 38–52.

## II. Plaintiff Has Failed To Allege That Any Violation of Her First Amendment Rights Was Caused by a Municipal Policy or Practice.

In its memorandum, the District explained that plaintiff had failed to allege a plausible theory of municipal liability against it because she did not allege that the purported watchlist policy was implemented by a "final policymaker," nor did she allege that the purported watchlist policy

rose to the level of a custom or practice. Def.'s Mem. at 20–25. Plaintiff's pleading deficiencies apply to the alleged policies under both former Chief Newsham and Chief Contee. *Id*. In opposing the District's motion, plaintiff misapplies the test for when an individual qualifies as a final policymaker and fails to show how a handful of alleged examples among thousands of FOIA requests establishes a custom or practice. Opp'n at 23–28.

### A.     Plaintiff Has Not Identified a Final Policymaker for Municipal Liability Purposes.

In her opposition, plaintiff argues that the alleged watchlist policy of former Chief Newsham qualifies as the act of a final policymaker because "[u]nder FOIA, public bodies are tasked with making their own rules to govern the 'time and place' of access to public records." Opp'n at 25 (citing D.C. Code § 2-532(a), (b)) (emphasis omitted). But that language cannot bear the weight plaintiff places on it. Section 2-532(a) merely provides MPD with the ability to develop ministerial rules concerning the mechanics of how FOIA requests are handled, which it did in General Order 204.05, *see* Def.'s Mem. at 3.

As previously explained by the District, D.C. Code § 2-531 *et seq*. sets out detailed requirements for how District agencies must address FOIA requests, eliminating agencies' discretion to craft their own policies. Def.'s Mem. at 2–3. In setting forth those requirements, the Council did not use permissive language; it used mandatory language. For example, Section 2-532 repeatedly uses "shall" when describing a public body's obligations, such as "a public body … shall within 15 days … of the receipt of any such request either make the requested public record accessible or notify the person making such request of its determination not to make the requested public record or any part thereof accessible." D.C. Code § 2-532(c)(1). District law also provides that any failure to comply with the time provisions of subsections (c) and (d) of Section 2-532 "shall be deemed a denial of the request." *Id*. § 2-532(e). And Section 2-532 specifically imposes

certain obligations on MPD. *Id*. § 2-532(c)(2)(A)–(B). Simply put, nothing in the District's FOIA delegates to agencies like MPD the authority to implement policies or procedures that contradict the specific requirements of District law. To the contrary, District law imposes rigid obligations on agencies with regard to how they must respond to FOIA requests and the consequences for failing to meet those obligations. It would be anomalous, to say the least, if District law both required MPD to address a request for a body-worn camera within 25 days in Section 2-532(c)(2)(A), but at the same time provided MPD with the discretion in Section 2-532(a) to promulgate a policy that required it to respond to requests for body-worn cameras within a longer period of time. Yet, under plaintiff's theory, MPD would have exactly such discretion.

Further, while plaintiff argues that the Mayor's oversight authority proves that the Chief is the final policymaker, *see* Opp'n at 25 (citing D.C. Code § 2-538), it actually does the opposite—it shows that the Mayor retains final policymaking authority with regard to substantive FOIA policies. The purpose of Section 2-538 is not to enable the Mayor to assess agencies' compliance with their own policies. The purpose of Section 2-538 is to enable the Mayor to assess agencies' compliance with District law. Nothing in Section 2-538 suggests that MPD, or any other agency, has been delegated the discretion to promulgate general policies akin to the watchlist policy alleged by plaintiff.

The case law cited by plaintiff confirms that the Chief of Police is not a final policymaker as to the requirements governing FOIA requests. *See* Opp'n at 24–25. In *Sanders v. District of Columbia*, 85 F. Supp. 3d 523, 528 (D.D.C. 2015), the issue was whether the Chief of Police was a final policymaker with regard to a specific employment decision concerning a specific officer. In concluding that he was, the Court cited regulations that expressly delegated to the Chief full authority over employment decisions. *Id*. at 530–31. No such broad delegation of authority exists

12

under the District's FOIA. Similarly, in *Dave v. District of Columbia Metropolitan Police Dep't*, 905 F. Supp. 2d 1, 5 (D.D.C. 2012), the Court was addressing whether the Chief was the final policymaker regarding a specific employment decision. By contrast, in *Singletary v. District of Columbia*, 766 F.3d 66, 74 (D.D.C. 2014), the Court found that the Board of Parole was *not* a final policymaker because while it had discretion to make individual parole revocation decisions, it did not have the power to promulgate general rules or other policies. So too here. The Chief has no authority to promulgate general policies that contradict District law. Yet, that is what plaintiff alleges: She alleges that the Mayor delegated to the Chief the power to promulgate general policies concerning FOIA requests and that the Chief used that power to create a policy that allowed certain requests to be unduly delayed, *see* Opp'n at 24, despite the fact that a policy of unduly delaying FOIA requests would directly contradict District law, D.C. Code § 2-532(c)(1) (providing that FOIA requests must be responded to within a certain time period). Plaintiff is wrong.

Even assuming that the creation of the alleged watchlist policy could qualify as the act of a final policymaker, plaintiff's attempt to attribute that policy to Chief Contee should fail. *See* Opp'n at 27–28. Plaintiff's sole allegation concerning Chief Contee is that she was told by Ms. Parker that unidentified MPD employees informed her that Chief Contee has continued the watchlist policy. *See* Compl. ¶ 52. As to plaintiff's failure to allege any details concerning Chief Contee's operation of the alleged watchlist policy, including any examples of it being applied since Chief Contee assumed his position in January 2021, plaintiff attempts to explain those omissions away by contending that she "cannot allege specific instances because her principal source has left MPD." Opp'n at 28. But plaintiff's explanation is inconsistent with the very theory she is advancing. Plaintiff alleges that the watchlist policy applies to requestors who have been critical of MPD. If those individuals had been subjected to the watchlist policy during the last 15 months,

presumably they would be aware of it. A source would not be necessary to ascertain, for example, whether their requests had been unreasonably delayed or obstructed. The only reasonable inference to be drawn from plaintiff's lack of allegations concerning Chief Contee and the operation of the alleged watchlist policy is that no such policy could exist.

For those reasons, plaintiff's final policymaker theory of liability should be rejected.

**B.     Plaintiff Fails To Allege That MPD Ever Had a Custom or Practice of Treating FOIA Requests Differently Based on the Identity of the Requestor.**

In her opposition, plaintiff does not dispute that she must allege "concentrated, fully packed, precisely delineated scenarios" to show a custom or practice, Def.'s Mem. at 23 (quoting *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013)), nor does she dispute that she has alleged only 20 purported examples of the watchlist policy being applied over the course of several years with none occurring during the last two years despite MPD receiving thousands upon thousands of FOIA requests during that time. *See* Opp'n at 23–27. Instead, plaintiff argues that the alleged custom only applies to "controversial" requests and therefore the Court should assess what percentage of "controversial" requests the watchlist policy has been applied to. And, according to plaintiff, because "[t]he District points to exactly zero instances in which the District fairly treated a controversial FOIA request," Opp'n at 27 (emphasis omitted), plaintiff has alleged a custom or practice. Plaintiff is mistaken.

First, plaintiff's attempt to divide FOIA requests into controversial and non-controversial should be rejected. Plaintiff fails to explain what she means by "controversial" or how "controversial" was defined under any alleged policy. Given the abstract nature of her standard, it is impossible to assess which scenarios fit within the alleged policy and which do not. Plaintiff's custom theory should be rejected for that reason alone. *See Spann o/b/o Spann v. Bogalusa City*

14

*Police Dep't*, Civil Action No. 20-2780, 2021 WL 4318133, at *4 (E.D. La. Sept. 23, 2021) (granting motion to dismiss when allegations of custom were too vague).

Second, even assuming one could identify the subset of FOIA requests that come within plaintiff's definition of "controversial," her argument that the vast majority of requests received by MPD do *not* fit within that definition—and therefore are not relevant in assessing whether she has alleged "concentrated, fully packed" scenarios—defies common sense. At one point, plaintiff suggests that a "controversial" request is a request that "might lead to criticism of MPD," Opp'n at 23, which would place all other requests in the non-controversial bucket. Even assuming one could differentiate between requests that subjectively "might" lead to criticism from those that "might not," given the burden associated with submitting a FOIA request, it would be more reasonable to assume that most requests are intended to obtain information that "might lead to criticism of MPD." Plaintiff proffers no other explanation for why one would submit a request. And, while it is likely true that some requests are purely seeking information that would not lead to criticism of MPD, plaintiff's custom or practice theory depends on MPD receiving an extremely small number of requests that "might lead to criticism," otherwise her 20 or so alleged examples would plainly fail to meet the custom or practice standard. Because the only reasonable inference to be drawn from the number of FOIA requests that MPD receives each year is that a substantial number of them "might lead to criticism," plaintiff's small number of alleged examples fails to sufficiently allege a custom or practice. *Univ. Legal Servs., Inc. v. District of Columbia*, Civil Action No. 18-0301, 2019 WL 1430045, at *9 (D.D.C. Mar. 30, 2019) (Brown-Jackson, J.) (explaining that "smattering of alleged violative conduct falls far short of meeting the high threshold for municipal liability," especially when plaintiff failed to allege "the overall rate at which the District fails to timely provide records as required by [the relevant statutes]").

15

Finally, as explained above, plaintiff's failure to identify any purported examples of the watchlist policy occurring under Chief Contee should prevent her from advancing a custom or practice claim to support her claim for prospective relief. *See* II.A above.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's motion to dismiss, the Court should dismiss plaintiff's Complaint with prejudice.

Dated:  April 6, 2022.                        Respectfully submitted,

                                              KARL A. RACINE
                                              Attorney General for the District of Columbia

                                              CHAD COPELAND
                                              Deputy Attorney General
                                              Civil Litigation Division

                                              */s/ Fernando Amarillas*
                                              FERNANDO AMARILLAS [974858]
                                              Assistant Deputy Attorney General

                                              */s/ Richard P. Sobiecki*
                                              RICHARD P. SOBIECKI [500163]
                                              PAMELA DISNEY [1601225]
                                              AMANDA C. PESCOVITZ [1735780]*
                                              Assistant Attorneys General
                                              Equity Section
                                              400 Sixth Street, N.W., Suite 10100
                                              Washington, D.C. 20001
                                              (202) 805-7512
                                              richard.sobiecki@dc.gov

                                              *Counsel for Defendant*

---

\* Admitted to the Bar under D.C. App. R. 46-A (Emergency Examination Waiver). Practicing under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to D.C. App. R. 46-A(d)(2).