UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMY PHILLIPS,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 22-277 (JEB)

## MEMORANDUM OPINION AND ORDER

    This First Amendment suit alleges that, in responding to requests for information under the local Freedom of Information Act, the District of Columbia's Metropolitan Police Department singles out, *inter alia*, political opponents of the Department for different treatment. Movant here is not Plaintiff Amy Phillips, but her star witness, Vendette Parker, who previously served as MPD's FOIA Officer. She has attested to the existence of "an unofficial, unwritten policy that required the FOIA Officer to notify [MPD] Chief Newsham and [MPD's Chief Operating Officer] of any FOIA request originating from the media, certain identified individuals, or requests for certain records," including requests from individuals who had "previously published a negative media article" about MPD or "use[d] the records for litigation." ECF No. 54-17 (Declaration of Vendette Parker), ¶¶ 8–9.

    Parker claims that, in moving for summary judgment, the District made public certain deposition testimony that she had designated as confidential and, in so doing, violated the Protective Order entered in this case and Federal Rule of Civil Procedure 45. See ECF No. 57 (Mot.) at 7–12; see also ECF No. 24 (Protective Order), ¶ X.F (providing that third parties subject to discovery "may invoke the terms of this Protective Order"). She thus moves for an

1

order to show cause why Defendant should not be held in contempt for flouting an order of this Court. See Mot. at 1. The District rejoins that Parker never, in fact, designated the testimony in question as confidential according to the procedure set out in the Protective Order. See ECF No. 60 (Def. Opp.) at 10–15. Finding the District's interpretation of the Protective Order more persuasive and Rule 45 unhelpful to Parker, the Court will deny the Motion.

## I. Protective Order

Start with the Protective Order, which lies at the heart of this dispute. Paragraph II.D states that to designate as confidential portions of "depositions or other pretrial testimony," a party must either 1) make "a statement on the record . . . at the time of such disclosure," or 2) provide "written notice . . . to all parties within ten (10) days after receiving a copy of the transcript thereof." It further specifies that, no matter the manner of designation, the party must also "direct[] the court reporter that the appropriate confidentiality legend be affixed to the first page and all portions of the original and all copies of the transcript containing any confidential information." Id. Clear enough. Unfortunately, that is not the Protective Order's last word on the topic. Elsewhere, it indicates that "[a]ll deposition transcripts . . . shall be treated as confidential information . . . for ten (10) business days after receipt of each of the transcripts," and that "[d]uring that time, any party may designate any part of such material as confidential . . . by notifying all other parties in writing of such designation." Id., ¶ V.B. There is thus some uncertainty about whether contacting the court reporter is, in the end, necessary for designation.

In any event, whichever provision is controlling, Parker did not satisfy its requirements. To begin, she concededly never communicated any designations to the court reporter and thus did not comply with Paragraph II.D. See ECF No. 68 (Reply) at 1. That was not her only shortcoming, however. The only action she took to designate her testimony came in the form of

an email her counsel sent to the other parties several days after the deposition, but before anybody had received the transcript. See ECF No. 60-1 (Designation Email); Def. Opp. at 4. That email advised the parties that "the portion of her recent deposition in which she discussed retired members of the MPD and their personal information," as well as "the MPD report that [she] provided . . . to Eric Flack," should be "deemed confidential." Designation Email. That being the case, she neither gave "written notice . . . to all parties within ten (10) days after receiving a copy of the transcript thereof," Protective Order, ¶ II.D (emphasis added), nor "designate[d] any part of such [transcript] as confidential" within "ten (10) business days after receipt of each of the transcripts." Id., ¶ V.B (emphasis added). Her attempt to designate was, therefore, just that — an attempt, and a faulty one at that.

Reading the Protective Order to require written designations following the receipt of the transcript hardly "elevates form over substance," as Parker suggests. See Reply at 1. If anything, it exalts practicality because where designations lack specificity, confusion results. By contrast, requiring references to the precise location — namely, page and line numbers — of confidential testimony in a transcript (which the rule implies is required and which logically can only be done once a transcript is disseminated) prevents the ambiguity that follows when a party attempts to designate topics of testimony. Indeed, Parker's ostensible designation of testimony concerning "retired members of the MPD and their personal information" is quite broad and open to some interpretation.

Parker is no more successful, moreover, in pointing out that her "counsel stated on the record at the close of her deposition that she intended to assert that certain portions of the deposition should remain confidential." Reply at 1–2. As an initial matter, that mode of designation is only permitted by Paragraph II.D of the Protective Order — that is, the one that

3

also mandates communication with a court reporter, which she never saw through. Her contention is also not backed by anything in the deposition transcript, as far as the Court can tell. Id. (citing, without pincite, 541-page deposition transcript). Whichever way you slice the Protective Order, Parker's gestures at designation were incomplete.

Since Parker never designated the relevant testimony in a way recognized by the Protective Order, there is no reason to impose the "severe remedy" of civil contempt for the District's decision to file it on the public docket. See Taggart v. Lorenzen, 139 S. Ct. 1795, 1802 (2019) (citation omitted). Such extreme action is reserved, in any event, for violations of a "clear and unambiguous" order. Armstrong v. Exec. Off. of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993). "[W]here there is [a] fair ground of doubt as to the wrongfulness of the [party's] conduct," a court "should not . . . resort" to holding it in contempt. Taggart, 129 S. Ct. at 1801 (cleaned up). That Parker neglected to contact the court reporter and communicated her designations in writing before the transcript was sent (and thus without reference to it) constitutes more than a "fair ground" for thinking that she never designated the testimony. Id.

Parker submits that, at the least, Defendant was required to resolve any disagreement about the designation status of her deposition excerpts through the procedure provided for in the Protective Order — namely, by attempting informal resolution and then jointly seeking the Court's intervention. See Mot. at 9 (citing Protective Order, ¶ IV.B). Not so. Paragraph IV of the Protective Order, as the District observes, seemingly requires conflict resolution only as to disputes over whether actually designated materials meet the Order's definition of "confidential." See Def. Opp. at 17; see also Protective Order, ¶ I.A (defining what counts as confidential). It applies when "any party disagrees . . . with the designation of any information as confidential" and states that a "receiving party may request that the producing or designating party withdraw

4

the confidential . . . designation." Protective Order, ¶ IV.A.  The unstated assumption in this provision is thus that an actual designation has been made.  Because Defendant reasonably understood that Parker had not designated anything in the first place, it also reasonably believed that Paragraph IV did not constrain its ability to file on the docket without first seeking Court approval.  At the least, the Protective Order was not so "clear and unambiguous" on this point that the District was on notice that its conduct was improper.  See Armstrong, 1 F.3d at 1289.

What is more (and without getting into the back-and-forth the parties engaged in prior to the District's filing), the Court agrees that the District acted commendably by giving Parker a two-week window during which to move for sealing before it filed the unredacted testimony on the docket.  See ECF No. 57-2 (Meet & Confer Emails) at 8–9.  That she did not capitalize on that opportunity is no fault of Defendant's.

Nor can the Court construe her Motion as one for sealing because her arguments on that score are woefully inadequate.  She devotes all of two sentences to her contention that sealing is appropriate under United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980).  See Mot. at 12–13.  Her suggestion that, for instance, the deposition testimony "implicates the privacy interests of both [herself] and other uninvolved third parties" is far too vague to warrant relief.  Id. at 13.  Nor is it dispositive to the analysis that the Court has "previously granted a motion to seal some of this same material," as she supposes.  Id.  No doubt, the Court approved the sealing of related deposition testimony filed on the docket as part of a discovery dispute.  See Minute Order of Oct. 31, 2023.  But the testimony in question is not identical, and the Hubbard factor concerning "the need for public access to the documents at issue" takes on heightened significance in the context of summary-judgment briefing.  See 650 F.2d at 317; cf. Food Delivery Holding 12 S.A.R.L. v. DeWitty & Assocs. CHTD, 2021 WL 860262, at *2 (D.D.C. Mar. 8, 2021) ("The need for public

access to judicial documents is at a low ebb when discovery materials are at issue."). If Parker still believes that sealing is appropriate even after the Court's ruling here, she may file a separate motion to seal making that case in greater detail.

**II.     Rule 45**

Finally, Parker invokes Federal Rule of Civil Procedure 45 as an alternative basis for relief, but that Rule has no bearing on the instant dispute. To be sure, it includes an exhortation to "avoid imposing undue burden or expense on a person subject to [a] subpoena" or else face sanctions, see Fed. R. Civ. Pro. 45(d)(1), and Parker notes that invasions of privacy can be burdensome. See Mot. at 10 (citing Korotki v. Cooper Levenson, Apr., Niedelman & Wagenheim, P.A., 2022 WL 2191519, at *6 n.9 (D.N.J. June 17, 2022)). But, as Defendant argues, Rule 45 penalties are typically reserved for situations in which a "subpoena was issued in bad faith or for some improper purpose," Goldberg v. Amgen, Inc., 123 F. Supp. 3d 9, 22–23 (D.D.C. 2015), and Parker levies no such accusation. See Def. Opp. at 22. Rather, her concern is primarily with "the adjudication of related follow-on issues" to subpoena compliance, which do not come within the Rule's protections. See Goldberg, 123 F. Supp. 3d at 23 (citation omitted). As neither Parker nor the Court has located any case imposing Rule 45 sanctions in a situation like the present one, the Court need not consider whether the District truly imposed an undue burden on her privacy by filing the testimony in question on the docket.

To the extent that Parker makes a freestanding argument under Rule 45 that the subpoena itself — with which she has already complied and to which she has never before objected — was overly burdensome, that suggestion is no better taken. On this point, she repeatedly references the 50 hours her counsel has spent in complying, see Mot. at 11; Reply at 4, but nowhere engages with whether that figure was disproportionate to the need to collect discovery from a

key witness in the case. Without more, the Court cannot conclude that the subpoena asked for too much. See Watts v. SEC, 482 F.3d 501, 509 ("courts supervising discovery [must] be generally sensitive to the costs imposed on third parties," but burden is only a "factor" used in "evaluating the balance of competing needs in Rule 45 inquiry") (cleaned up); see also id. ("[D]istrict courts in all discovery [must] consider a number of factors potentially relevant to the question of undue burden, including . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."). This contention, then, like the others, does not persuade.

      The Court, accordingly, ORDERS that Parker's [57] Motion for Order to Show Cause is DENIED.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: May 2, 2024