**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMY PHILLIPS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 22-277 (JEB)** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

**<u>MEMORANDUM OPINION</u>**

This suit, much like a Rorschach test, looks very different depending on the litigants' perspectives. For Plaintiff Amy Phillips, a public defender here in the District and an inveterate critic of the local police force, this is a muckraking lawsuit trying to topple a Metropolitan Police Department policy of singling out Freedom of Information Act requests for higher scrutiny based on whether the requesters are friends or foes of MPD. For Defendant District of Columbia, by contrast, this is a nothing burger about the Department's justifiable practice of notifying its Chief of Police of requests for high-profile materials so that she can be prepared to answer questions about these incidents and the resulting FOIA demands.

After two years of litigation and a contentious discovery period that produced more disputes than the Court would care to remember, Defendant now moves for summary judgment. It argues that Phillips lacks standing to seek prospective relief, has not established that the policy she wishes to challenge ever existed or caused her harm, and cannot show that this policy is attributable to the District. Phillips cross-moves for partial summary judgment. The Court ultimately delivers a split decision, denying Plaintiff's Motion while granting in part and denying in part Defendant's.

I.     **Background**

    A.  Factual Background

    Since the bulk of this Opinion deals with Defendant's Motion, the facts here are set forth

in the light most favorable to Plaintiff.  Phillips, a self-described critic of MPD and a "FOIA

nerd," ECF No. 54-6 (Dep. of Amy Phillips) at 17:22–18:2, is an attorney with the Public

Defender Service here in the District.  See ECF No. 63-1 (Pl. SUMF), ¶ 80.  She has often taken

to X (formerly Twitter) to voice her criticisms of MPD and has also aired her grievances against

the department at a D.C. Council hearing.  Id., ¶¶ 82–84.  Phillips, true to her moniker, is also a

frequent user of the D.C. FOIA.  See ECF No. 54-1 (Def. SUMF), ¶ 65 (noting that Phillips has

made a "hobby of making FOIA demands of MPD") (cleaned up).  Although she alleges that she

"uses FOIA to expose police wrongdoing," Pl. SUMF, ¶ 80, she has also said that she submits

FOIA requests to "screw with the police."  ECF No. 54-31 (May 31, 2020, Email Chain Between

Phillips and Blanks) at 3.

    The events that ultimately spawned this suit began on November 7, 2018, when Phillips

submitted a FOIA request "seeking documents related to adverse action hearings" (i.e.,

disciplinary hearings to investigate possible police misconduct), including transcripts of past

hearings and decisions stemming therefrom.  See Pl. SUMF, ¶ 96.  After a monthslong delay and

an appeal to the Mayor's Office of Legal Counsel — which found that the delay amounted to a

"constructive denial" of Plaintiff's request, see ECF No. 54-39 (Jan. 10, 2019, MOLC Letter to

Phillips) at 14 — MPD eventually produced responsive adverse-action hearing calendars and

transcripts.  See Pl. SUMF, ¶¶ 108, 111.  More specifically, Vendette Parker (a key character in

this tale, as the reader will soon learn) emailed Phillips these documents.  Id., ¶ 111.  Still,

according to Plaintiff, Defendant withheld and continues to withhold some documents that are responsive to this request.  Id., ¶ 132.

Phillips received a similarly tardy and incomplete response to another FOIA request she made in March 2019.  This time around, she sought transcripts and other materials related to a particular adverse action hearing she attended, which was held to adjudicate alleged misconduct by former MPD officer Sean Lojacono.  Id., ¶¶ 137, 141.  Before that day was up — indeed, a mere 79 minutes after receiving the request, see ECF No. 61-13 (Dep. of Latrina Crumlin) at 164:22–165:1 — MPD denied it, apparently because of a Department policy of denying requests for "personnel records."  Def. SUMF, ¶¶ 101–03.  To no one's surprise, Plaintiff did not agree with this outcome and appealed to MOLC.  See Pl. SUMF, ¶ 151.  That agency gave her some relief, forcing Defendant to release responsive records to Phillips.  See id.; ECF No. 54-39 (April 2, 2019, MOLC Letter to Phillips) at 25.  In September of that same year, she finally received responsive records, though she believes that MPD once again held out on her by withholding materials like body-worn-camera videos.  See Pl. SUMF, ¶¶ 163–64.

All in all, Plaintiff has filed "over a dozen FOIA requests with MPD" since 2018, including at least one that is currently pending.  Id., ¶¶ 94, 203 (citing ECF No. 61-5 (Decl. of Amy Phillips), ¶ 40 (describing 2024 FOIA request for even more adverse-action-hearing documents as well as her intent to continue to file similar requests)).  Some, like the two described above, met with limited success.  See, e.g., id., ¶¶ 181–92 (describing July 2019 request that resulted in no documents even after successful MOLC appeal).  Others proved more fruitful, though not to the extent Plaintiff hoped for.  See, e.g., id., ¶¶ 193–201 (detailing October 2020 request for emails to the Chief of Police referencing Phillips that resulted in numerous documents being released to her).

Readers might be thinking that this suit turns on Defendant's apparently chronic failure to comply with D.C.'s FOIA.  After talking with Parker, however — the same Parker who worked as MPD's FOIA officer from 2017 to 2020 and rejected many of Phillips's previous requests, see Def. SUMF, ¶¶ 18, 27 — Plaintiff became convinced that something more sinister was afoot.  Specifically, she learned of the existence of a policy of subjecting certain FOIA requests to additional scrutiny.  See Pl. SUMF, ¶ 13.  Pursuant to this policy — which the parties call Executive Office of the Chief of Police (EOCOP) Review — MPD's FOIA officer was tasked with elevating "sensitive" requests, such as those seeking documents related to "high profile incidents," for further review by the Chief of Police or someone in his leadership team.  See ECF No. 54-3 (Vol. I of Dep. of Leeann Turner) at 293:4–9; Def. SUMF, ¶¶ 39–40, 48.  Requests considered "high profile" or "sensitive" included those seeking records related to police shootings, protests in the District following the death of George Floyd in 2021, and any other event that might garner significant media attention.  See Turner Dep. at 176:22–177:4, 180:8–17, 320:11–18.  While the scope of this policy is not entirely clear, it seems that EOCOP Review consisted of both informing the Chief of Police and/or his retinue of a particular FOIA request and allowing one of those individuals to review proposed responsive documents before approving their release.  See ECF Nos. 61-26 (Dep. of Lisa Archie-Mills) at 314:3–9 (explaining that FOIA office would "note" whether request was "media [or] . . . high profile"); 54-4 (Vol. II of Dep. of Leeann Turner) at 402:21–22,  403:4–7 (acknowledging that EOCOP Tuesday Review meetings included reviewing "documents that are proposed to be released" and "some of them would be cleared by the end of the meeting").

Given that EOCOP Review had to take place for flagged FOIA requests before any documents could be produced, it often resulted in delays.  See Pl. SUMF, ¶ 53; Archie-Mills

Dep. at 156:22–157:7 ("[T]he FOIA office cannot release a response to a FOIA request that has been elevated for EOCOP review until EOCOP approves that release.").  This process could prolong the withholding of potentially responsive materials for months and even years, see Parker Dep. at 46:14–17; Archie-Mills Dep. at 132:7–12, though not every delay was this long, nor did EOCOP Review cause delays in every case.  See Def. SUMF, ¶¶ 39, 44; Turner Dep. at 402:17–19 ("[I]t could be a few minutes . . . a day[,] a couple days.").

That was not all, however.  Crucially, this policy was also aimed at FOIA requests made by individuals and organizations "considered to be critics of MPD."  Phillips Dep. at 29:15–16; ECF No. 54-5 (Dep. of Vendette Parker) at 24:21–25:1 (targets of EOCOP Review included "elected officials," "community activists," and "the media").  As the Department's FOIA officer, Parker was instructed to elevate "any requests coming from a person that had previously published a negative article about [the Chief of Police] or MPD."  Parker Dep. at 31:10–14; see also id. at 32:20–33:13.  Among the requests flagged for additional review pursuant to this portion of EOCOP Review, at least during Parker's tenure, were those submitted by the local Public Defender Service (Phillips's employer) that sought "information that could be used to be critical towards MPD."  Id. at 103:10–15.  Indeed, she also began flagging requests that came from Phillips herself after some time, id. at 224:15–22, as "the content [she sought] could be used to be negative or critical of MPD."  Id. at 430:21–431:4.

B.  Procedural Background

Armed with Parker's insider knowledge and seeking to challenge the District's policy, Plaintiff filed suit in early 2022.  See ECF No. 1 (Compl.).  The District responded with a motion to dismiss, which this Court denied soon thereafter.  See Phillips v. Dist. of Columbia, 2022 WL 1302818 (D.D.C. May 2, 2022) (Phillips I).  In an effort to bolster her claim after considerable

discovery, Phillips subsequently sought to add an additional D.C.-law cause of action and supplement her factual allegations.  See ECF No. 28 (Mot. to Amend).  She was not as lucky this time around given her substantial delay, as the Court permitted her to add to her factual allegations but denied her request to add a new count.  See Phillips v. Dist. of Columbia, 2023 WL 5607449 (D.D.C. Aug. 30, 2023) (Phillips II).

With that understanding in place, Phillips filed her Amended Complaint in September of last year.  See ECF No. 42 (Am. Compl.).  That pleading, which is the operative one here, contains a single 42 U.S.C. § 1983 count alleging that Defendant violated Plaintiff's First Amendment rights by delaying or outright denying her requests "on the basis of the content and viewpoint of speech that requesters will voice using the requested information and . . . speech that requesters have voiced in the past."  Id., ¶ 99.  Defendants have now moved for summary judgment, and Plaintiff has responded with a Motion for Partial Summary Judgment of her own. See ECF Nos. 54 (Def. MSJ); 61-1 (Pl. Partial MSJ).

## II.     Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). The Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant, in other words, is required to provide evidence that would permit a reasonable jury to find in his favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

## III.   Analysis

The Court begins with Plaintiff's partial Motion before turning to Defendant's.

### A.   Plaintiff's Motion

In seeking partial summary judgment, Phillips characterizes her case as a challenge to two different components of Defendant's policy: (1) the policy of discriminating against FOIA requests filed by "MPD critics," and (2) the policy of subjecting requests for "high-profile" materials to EOCOP Review. See Pl. Partial MSJ at 1. She explains that she only seeks summary judgment on the latter and "will prove part 1 at trial." Id. Her theory, it seems, is that the very practice of subjecting certain FOIA requests to more scrutiny based on their content is a

First Amendment violation, even if this added layer of review has nothing to do with the requester's prior speech.  Id. at 17–20.

To begin, the most fundamental hurdle standing in Plaintiff's way is that her characterization of her Amended Complaint is inaccurate.  The only count in her pleading states that D.C. violated the First Amendment by subjecting Phillips's requests to greater delays "because of the content and viewpoint of her prior protected speech and . . . the speech that she intends to voice with requested information in the future."  Am. Compl., ¶ 103.  This was why, when describing Plaintiff's claim, the Court characterized it as "the denial of a public benefit because of her expressed views."  Phillips I, 2022 WL 1302818, at *6 (emphasis added); Phillips II, 2023 WL 5607449, at *1 (similarly describing suit as challenging policy of "delaying" FOIA requests because of "requesters' speech").  At no prior point did Phillips intimate that her suit included a challenge to the District's policy on high-profile materials.  As she "cannot amend her Complaint through summary-judgment briefing," Paylor v. Dist. of Columbia, 2024 WL 1050336, at *8 (D.D.C. Mar. 11, 2024), Phillips's Motion does not succeed.

Even if the Court permitted such recasting, however, it would aid her little.  For example, she does not explain how this second component she is supposedly attacking implicates speech at all.  Cf. Edwards v. Dist. of Columbia, 755 F.3d 996, 1001 (D.C. Cir. 2014) (to succeed in First Amendment challenge, plaintiffs must "show that the regulations are unconstitutional as applied to their particular speech activity") (emphasis added).  She simply asserts, without citation, that "Plaintiff's requests themselves are protected speech."  ECF No. 75 (Pl. Reply) at 6.  Since D.C. could decide "not to give out . . . information at all," however, it is hard to see how she could establish a constitutional right to make such a request — much less a First Amendment right to have her requests handled with expediency.  Los Angeles Police Dept. v. United Reporting

Publishing Corp., 528 U.S. 32, 40 (1999); see also McBurney v. Young, 569 U.S. 221, 232 (2013) ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws."); Houchins v. KQED, Inc., 438 U.S. 1, 14 (1978) (plurality) ("The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act."); Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 934 (D.C. Cir. 2003) ("[D]isclosure of government information generally is left to the political forces that govern a democratic republic.") (cleaned up).

What is more, if Plaintiff is right that FOIA requests are themselves speech and that any content-based distinctions in their treatment merit strict scrutiny, then it is hard to see how any FOIA statute could survive constitutional challenge. After all, as Defendant rightly points out, all FOIA laws "inherently require[] differential treatment of requests based on their" content. See ECF No. 72 (Def. Opp.) at 4. One need look no further than the District FOIA's own exemptions from disclosure — e.g., for "[t]rade secrets," "[i]nformation of a personal nature," "[i]nvestigatory records compiled for law-enforcement purposes," and "intra-agency memorandums." D.C. Code § 2-534(a)(1)–(4). Deployed in practice, government officials can determine what to redact only by looking at what a requester is asking for. Much like public funding for the arts, then, FOIA regimes are such that "content-based considerations" are "a consequence of the nature" of the public benefit being bestowed. Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 585 (1998) (content-based regulations for arts funding do not implicate constitutionally protected speech). It is telling, but entirely consistent, that Plaintiff cannot point to any instance where a court has entertained such a constitutional challenge to a FOIA statute or policy. See Pl. MSJ at 19–20 (denying that her theory is novel but pointing to cases like Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., 570 U.S. 205 (2013), where public benefit was

conditioned on not advocating for certain positions unrelated to benefit and thus "affect[ed] protected conduct outside the scope of the federally funded program," id. at 218) (cleaned up).

The Court will accordingly deny Plaintiff's Motion and will focus on the only D.C. policy that is properly before it — viz., its subjecting FOIA requests coming from MPD critics to worse treatment.

B. Defendant's Motion

Unlike Plaintiff's more modest Motion, the District takes a total-war approach, contending inter alia that Phillips has not made out a predicate constitutional violation, that she cannot hold the City liable for any constitutional harm because there was no policy or practice behind it, and that she lacks standing to seek injunctive relief. Because the last of these concerns the Court's jurisdiction, it begins there. It then turns to the remaining elements of Plaintiff's Section 1983 claim: whether she suffered a constitutional harm and whether it was caused by an unconstitutional policy attributable to Defendant.

1. *Standing for Injunctive Relief*

Article III of the United States Constitution limits the jurisdiction of federal courts to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing therefore represents a "predicate to any exercise of [the court's] jurisdiction." Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996).

To maintain standing, a plaintiff must meet three criteria. First, she "must have suffered an injury in fact — an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S.

at 560 (citations and internal quotation marks omitted).  Second, "there must be a causal

connection between the injury and the conduct complained of — the injury has to be

fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the

independent action of some third party not before the court."  Id. (alterations in original) (citation

and internal quotation marks omitted).  Third, "it must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  Id. at 561 (citation and

internal quotation marks omitted).  A "deficiency on any one of the three prongs suffices to

defeat standing."  US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).

 The Court returns to the "somewhat . . . involved" question of whether Phillips has

standing to pursue injunctive relief, a subject of its first Opinion.  Phillips I, 2022 WL 1302818,

at *3.  When a plaintiff seeks injunctive relief, "past injuries alone are insufficient to establish

standing."  Dearth v. Holder, 641 F.3d 499, 501 (D.C. Cir. 2011).  Instead, she must demonstrate

that she is "realistically threatened by a repetition of [her] experience" such that injury is

imminent.  Haase v. Sessions, 835 F.2d 902, 910–11 (D.C. Cir. 1987) (quoting City of Los

Angeles v. Lyons, 461 U.S. 95, 109 (1983)).  This standard obliges a plaintiff to: (1)

"demonstrate [the] existence" of a challenged policy or practice; and (2) establish that [she] is

"likely to be subjected to the policy again."  Id. at 911.  Such pleading requires "more than a

nebulous assertion of the existence of a 'policy.'"  Id.  Identifying only a "pattern of past events"

is not enough.  See Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the

Federal System (7th ed. 2015) at 232 (discussing O'Shea v. Littleton, 414 U.S. 488 (1974)).

Instead, a plaintiff must show that the threat she faces is ultimately "immediate" in nature.

Lyons, 461 U.S. at 102–106; Golden v. Zwickler, 394 U.S. 103, 109 (1969).

In previously denying Defendant's motion to dismiss, the Court found that Phillips had such standing both because it took the Complaint's allegations about the City's policy as true and because she had FOIA requests pending, meaning that there was an "imminent" risk that those requests would be subjected to Defendant's policy.  Phillips I, 2022 WL 1302818, at *3–4.  At this stage, though, a "plaintiff can no longer rest on . . . 'mere allegations,'" but must instead offer concrete evidence to support her standing.  Lujan, 504 U.S. at 561.  And while Phillips can still show that she has FOIA requests pending, see Phillips Decl., ¶ 40, she has not "set forth . . . specific facts" showing that any current policy threatens to harm her.  Lujan, 504 U.S. at 561 (citation omitted).

The basic problem here is one of timing.  Parker, who gives Plaintiff the best evidence for the existence of the District's policy in this case, left MPD "more than four years ago."  Def. SUMF, ¶ 27.  As a result, she can certainly speak to what policies MPD had in place during her tenure, which ran from October 2017 to January 2020, but she knows little about how they function now.  Id., ¶¶ 21, 27.  To be sure, current MPD officials also attested to a policy referred to as EOCOP Review.  See Pl. SUMF, ¶¶ 13–18 (collecting evidence from depositions of Turner, Archie-Mills, others).  Yet these individuals acknowledged only the practice of subjecting requests for high-profile or sensitive documents to that process, not the policy described in the suit — namely, delaying or denying requests based on the prior or future speech of the requester. See Def. MSJ at 34–36 (further highlighting that there is no evidence about FOIA policies of current Chief of Police); Pl. Reply at 23 (arguing only that policy of EOCOP Review "based on the content of the request" still exists).  Since, for the reasons explained above, that high-profile-requests practice is not at issue here, Phillips cannot rely on such testimony to show that the

challenged policy existed "as of the date of the Amended Complaint." Kinsley v. Blinken, 2021 WL 4551907, at *5 (D.D.C. Oct. 5, 2021) (citation omitted).

This being the case, Phillips flunks all three components of the standing test. Since she cannot establish the continued existence of the policy, she cannot show that that there is a "substantial risk" that her pending FOIA requests will be burdened in any way. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). Nor can she show that any forthcoming injuries are "fairly traceable" to the possibly defunct policy. Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010); Clapper v. Amnesty Int'l USA, 568 U.S. 398, 411 (2013) (no traceability where neither party nor witnesses had "actual knowledge of the Government's" challenged practice). Indeed, Phillips can only guess that her current FOIA requests will be run through the requester-focused review described by Parker. Cf. Clapper, 568 U.S. at 412 (no traceability where plaintiff could "only speculate as to whether the Government" would utilize challenged authority "rather than other methods" to cause supposed harm); Murthy v. Missouri, 144 S. Ct. 1972, 1994 (2024) (no standing to seek injunctive relief when challenged governmental practice "had considerably subsided" before injunction was sought). And, for the same reason, it is far from "likely" that a favorable decision will redress her injuries, since the Court cannot enjoin a policy that the City may or may not employ. See Murthy, 144 S. Ct. at 1993 ("To obtain forward-looking relief," a plaintiff must show that "allegedly wrongful behavior would likely occur or continue.") (cleaned up).

Plaintiff objects that D.C. has not put forth "evidence that MPD has ended the policy" she challenges, but that is precisely backwards. See Pl. Reply at 25. It is her burden, not Defendant's, to prove that the policy remains in existence and that her future injuries are traceable to that same policy. See Lujan, 504 U.S. at 561 ("The party invoking federal

jurisdiction bears the burden of establishing" standing.).  And the Court cannot ease that burden by simply assuming that the District continues to engage in potentially unconstitutional conduct, for the City and its officials are entitled to a "presumption of regularity" absent any evidence of current wrongdoing, Latif v. Obama, 677 F.3d 1175, 1178–79 (D.C. Cir. 2011), and past illegal conduct generally "does not in itself show a present case or controversy regarding injunctive relief." O'Shea, 414 U.S. at 495.  The Court will therefore grant summary judgment to Defendant with regard to Plaintiff's claim for injunctive relief.

     *2. Liability for Past Actions*

     We now move to the main event: Defendant's contention that Phillips has failed to make out the elements of her Section 1983 claim.  A municipality like the District ordinarily "cannot be held liable [under Section 1983] solely because it employs a tortfeasor." Singletary v. Dist. of Columbia, 766 F.3d 66, 72 (D.C. Cir. 2014) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Liability arises against such a defendant only when its "policy or custom . . . inflicts the injury." Id. (quoting Monell, 436 U.S. at 694).  To determine whether a plaintiff has made out such a claim, district courts conduct a two-step inquiry.  They first ask whether the plaintiff's complaint "states a claim for a predicate constitutional violation." Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  A plaintiff passes this test so long as she establishes "some constitutional harm suffered." Miango v. Democratic Republic of Congo, 243 F. Supp. 3d 113, 125 (D.D.C. 2017) (citation omitted).  Second, a court must determine whether the plaintiff has shown that "a custom or policy of the municipality caused the violation." Baker, 326 F.3d at 1306.  Unless a plaintiff can show that the municipal policy was the "moving force" behind the constitutional harm she suffered, she cannot hold a city liable under Section 1983. Id. (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

a. Constitutional Harm

As the Court explained in one of its previous Opinions, "[T]he First Amendment protects against differential treatment, including in the award of public benefits, based on a person's speech." Phillips I, 2022 WL 1302818, at *6. The Government thus cannot condition the receipt of a benefit on a recipient's refusing to express a particular viewpoint, even if "he has no entitlement to that benefit." Agency for Int'l Dev., 570 U.S. at 214 (citation omitted). Nor can a city make decisions about who can access its public records based on whether that individual is using this access to write things the city finds agreeable. See, e.g., Lanphere & Urbaniak v. Colorado, 21 F.3d 1508, 1513 (10th Cir. 1994) (First Amendment implicated when regulation on access to public records draws lines "based on the speech use of such records"). In such a case, that city would have to prove that its explicitly viewpoint-based policy "furthers a compelling interest and is narrowly tailored to that end." Reed v. Town of Gilbert, 576 U.S. 155, 171 (2015). Needless to say, that is a very tall order.

Defendant submits that Plaintiff has not shown any such violation of her First Amendment rights. It first argues that there is no evidence that MPD officials discriminated against Phillips based on her criticism of the Department. See Def. MSJ at 17. Plaintiff often did not suffer delays or denials, Defendant continues, making it even less likely that she was discriminated against based on her previously expressed viewpoints. Id. at 20. And even if she can prove that some of her FOIA requests received late responses, it adds, these can be explained by speech-neutral reasons. Id. at 22. Plaintiff retorts that the record paints a very different picture, showing a policy aimed at requesters based on their speech. See Pl. MSJ at 21–22. A policy, she further maintains, that is neither narrowly tailored nor supported by a compelling governmental interest. Id. at 22–28.

15

Bearing in mind that it must draw "all justifiable inferences" in favor of Phillips as the non-movant, the Court cannot agree with the City that its factual assertions are beyond genuine material dispute.  See Liberty Lobby, 477 U.S. at 255; Fed. R. Civ. P. 56(a).  To begin, the record here does not clearly show that "MPD officials did not know of [Phillips's] speech."  Def. MSJ 17.  Most notably, Parker testified that MPD had a policy of targeting FOIA requests from critics for additional review, that these critics included PDS and Phillips, and that this EOCOP Review could result in delays and denials.  See Parker Dep. at 31:10–15, 103:10–15, 224:15–22, 430:16–431:4; see also ECF No. 61-11 (2nd Dep. of Archie-Mills) at 588:19–21 (confirming that Phillips's request was at least once elevated for EOCOP Review).  Her superior also testified that, when Parker brought Phillips's Lojacono request to her, Parker informed her that "Amy Phillips had submitted a FOIA request."  Turner Dep. at 510:5–7.  A curious thing to announce if that name means nothing to anyone at EOCOP, as Defendant suggests.

The record, moreover, reveals that an article in which Phillips spoke critically of the Department was shared with the then-Chief of Police, further suggesting that Phillips was known to the relevant MPD officials as a critic.  See ECF No. 61-104 (June 2020 Article Email to Chief of Police) at 2–13 (sharing article where Phillips criticizes MPD's lack of transparency); see also ECF No. 61-54 (June 2020 Complaint Email to Chief of Police) at 2 (asking Chief for comment on FOIA lawsuit filed by Phillips and attaching complaint).  This might explain why one of the Chiefs of Police during the relevant time period sometimes asked for the identities of FOIA requesters.  See Pl. SUMF, ¶ 32.  The record also reveals an instance where an MPD employee elevated proposed responses to one of Plaintiff's requests for EOCOP Review and wrote, "This is a[n] AMY Phillips case."  ECF No. 61-58 (August 2019 Email to Archie-Mills) at 2.  Again, a curious thing to note if Phillips was a virtual stranger to MPD.

As if that were not enough, Plaintiff also points to other individuals who wrote negative stories about MPD and whose FOIA requests were similarly subjected to EOCOP Review.  See Pl. SUMF, ¶¶ 204–95.  One of them, a *Washington Post* columnist, wrote an article that was shared with the Chief of Police at the time and subsequently had her related FOIA request delayed by six months.  Id., ¶¶ 205–14.  Defendant believes that this evidence is irrelevant, since Phillips "cannot use facts concerning third parties to support her claim."  ECF No. 71 (Def. Reply) at 2.  But Plaintiff is not just challenging the District's policy as applied to her, but on its face; the Court said as much already and previously admonished Defendant for "misunderstand[ing] the nature of Plaintiff's challenge."  Phillips I, 2022 WL 1302818, at *7.  In deciding such a challenge, the Court not only can but should consider "circumstances beyond [this] individual case," as they bear on the contours of the challenged policy and whether it restricts too much speech.  Hodge v. Talkin, 799 F.3d 1145, 1156 (D.C. Cir. 2015); cf. United States v. Hansen, 599 U.S. 762, 769 (2023) (First Amendment permits overbreadth challenges even "at the behest of someone to whom the [challenged policy] can be lawfully applied").

The evidence here thus permits an inference that at least some of Plaintiff's FOIA requests were delayed or denied precisely because they were subject to the policy she now challenges.  See *supra* Part I.A (recounting some of Phillips's requests subject to EOCOP Review).  So even if the District is correct that many at MPD were not aware of Plaintiff and her critiques of the City's police department, the Court must consider as true the non-movant's evidence and draw all reasonable inferences in her favor, see Liberty Lobby, 477 U.S. at 255; as a result, it concludes that there is enough evidence for a reasonable jury to find that MPD did know these things and subjected Phillips to its EOCOP Review policy as a result.  Since the City

does not seriously argue that the explicitly viewpoint-based policy described by Parker is narrowly tailored, this suffices to reject its first go at summary judgment.

<b>b.    Municipal Policy or Practice</b>

Phillips is not out of the woods yet because she must also prevail at the second step of the Section 1983 inquiry.  Recall that she must establish a jury question on whether her constitutional injury was caused by a policy or practice of District.  The City can be responsible for the culprit policy in one of four ways: (1) by "the explicit setting of a policy by the government"; (2) by "the action of a policy maker within the government"; (3) by "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent they have become 'custom'"; or (4) by "the failure of government to respond to a need . . . in such a manner as to show deliberate indifference to the risk . . . [of] constitutional violation."  Baker, 326 F.3d at 1306 (cleaned up).

As she did at the motion-to-dismiss stage, Phillips contends that the challenged policy can be attributed to Defendant under either the second or third prong because the Chief of Police is an adequate policymaker for these purposes, which the Court explained before.  See Phillips I, 2022 WL 1302818, at *8–*9 ( "Although the Chief of Police may not be a final policymaker for all purposes, District law clearly renders him one for the purposes of this suit.").  In other words, she argues that the District can be held liable either because the Chief (or one of his delegees) decided to adopt the policy under review or because his inaction in the face of such a widespread practice created a custom "so engrained that it amount[s] to a 'standard operating procedure.'"  Pl. MSJ at 29 (quoting Hurd v. Dist. of Columbia, 997 F.3d 332, 338 (D.C. Cir. 2021)).  The City, of course, disagrees on both fronts.  See Def. MSJ at 27–34.

18

Plaintiff has the better of the argument on option number three, if not by much.  Three pieces of evidence, taken together, convince the Court that there is a genuine dispute of material fact on whether MPD's policy was so pervasive that it became a custom of which Chiefs of Police must have been aware.  First — not to beat that moribund horse — Parker has time and again said that she was instructed by officials within EOCOP to carry out a policy of elevating FOIA requests made by critics of the Department.  See ECF No. 54-17 (Decl. of Vendette Parker), ¶¶ 6–20; Parker Dep. at 70:14–19.  She also testified that these critics included Phillips and her colleagues at PDS.  See Parker Dep. at 103:10–15, 224:15–22, 430:21–431:4.  Given that Parker was the head of MPD's FOIA office for four years, her testimony constitutes specific facts that at the very least create a genuine dispute over whether the Chief's subordinates had created "a practice that was consistent enough to constitute custom."  Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).

Second, and as mentioned above, Plaintiff points to a number of other similarly situated individuals who wrote critically about MPD, submitted FOIA requests to the Department, and consequently had their requests elevated for EOCOP Review.  See Pl. SUMF, ¶¶ 204–95.  While this does not in itself show that Phillips was the victim of such a requester-focused policy — although there is evidence of this as well, see supra Parts I.A — it supports her position that the challenged policy was "so pervasive that it ha[d] become custom."  Pl. MSJ at 29 (cleaned up).

Third, the record strongly suggests that Chiefs of Police during the relevant time period were actually aware of such a practice.  One Chief, for example, attested to his "expectation . . . that FOIAs of significance would be brought to [his] attention."  See ECF No. 61-23 (Dep. of Chief Peter Newsham) at 179:4–6.  On at least one occasion, that same Chief inquired into the identity of the requester behind the FOIAs he was to review.  See ECF No. 61-114 (Sept. 2019

Text From Chief of Police) (asking, "Who are FOIAs from?").  Others further testified that the
Chief was often looped in pursuant to this policy and that he or others within EOCOP would
withhold documents until they "were comfortable with what was being released and prepared for
any backlash."  Parker Dep. at 176:18–177:8; see, e.g., ECF No. 61-112 (October 2019 Text to
Chief of Police) (sharing article critical of MPD with Chief and saying, "I was holding the foia
until you got back").  With regard to some of the third parties just mentioned, moreover, the
record shows that the Chief and his confidants received their critical write-ups and asked for
these individuals' FOIA requests only afterwards.  See, e.g., ECF No. 61-90 (April 2019 Email
Chain with Chief of Police) at 2–3 (first email to Chief shares *Washington Post* column critical
of MPD; last email asks Parker and her superior for columnist's FOIA); see also Newsham Dep.
at 237:2–7 (agreeing that FOIA request from Fox 5 DC reporter was flagged "in light of her prior
reporting").  Far from showing that the Chiefs of Police were "[s]imply going along with" their
subordinates, this record intimates that the Chiefs not only should have been but in fact were
aware of the policy in dispute here.  See Def. MSJ at 28 (quoting City of St. Louis v. Praprotnik,
485 U.S. 112, 130 (1988) (plurality)).  At a minimum, a reasonable jury could so find.

The District resists these conclusions, but its effort is misguided.  It posits that it is
entitled to summary judgment because Phillips cannot show that the Chiefs of Police ever
"discussed [her] at all."  Def. MSJ at 28.  But the relevant question is not whether the Chiefs
were aware of Plaintiff in particular, but whether they were or should have been aware of the
policy of singling out critics like Phillips to more stringent FOIA scrutiny.  The challenged City
custom, after all, is not the mistreatment of Phillips's requests but the burdening of requests
made by any and all MPD critics.  Contra id. at 31.  The City also notes that some Chiefs of
Police testified that they had not heard of the policy Phillips now challenges until she filed her

Complaint.  Id. at 31 (citing Def. SUMF, ¶ 85).  Yet the Court cannot give more weight to their testimony than to the record evidence described in the preceding paragraphs, which includes some documents that contradict those statements.  In fact, it cannot do any weighing of the evidence at this stage, but must instead "view the evidence in the light most favorable to" Plaintiff and "draw all reasonable inferences in her favor."  Czekalski, 475 F.3d at 363.  With this in mind, the Court concludes that Plaintiff has produced enough evidence for a reasonable jury to find that the Chiefs' subordinates instantiated a custom of burdening FOIA requests coming from MPD critics and that the Chiefs were aware or at least should have been aware of this practice.

*     *     *

In the end, the Court is not tasked with picking apart Plaintiff's evidence, making credibility determinations for the various witnesses in the case, or weighing the evidence in the record one way or another.  The question it is called to answer is much simpler: has Phillips produced enough to show that "a reasonable jury could return a verdict" for her?  Liberty Lobby, 477 U.S. at 248.  She did not do so for her request for injunctive relief and thus cannot show that she has standing to obtain such a remedy.  The Court, accordingly, will grant Defendant's Motion to that extent.  But she has met her burden as to the rest of her case, so the Court will not grant Defendant summary judgment on this part of Phillip's cause of action.

## IV.    Conclusion

For these reasons, the Court will deny Plaintiff's Motion for Partial Summary Judgment and grant in part and deny in part Defendant's.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  August 12, 2024